## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JILL HENNESSEY, Individually and<br>On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | )<br>) JURY TRIAL DEMANDED |
| vs. | )<br>) |
| THE GAP, INC. and  OLD NAVY, LLC | )<br>) |
| Defendants. | )<br>) |

## <u>PETITION</u>

Plaintiff Jill Hennessey ("Plaintiff"), by her attorneys, individually and on behalf of herself and others similarly situated, alleges upon personal knowledge as to herself and her acts stated herein and, as to all other matters, upon information and belief as follows:

## <u>SUMMARY AND PRELIMINARY STATEMENT</u>

1.      This is a class action brought by Plaintiff, individually and on behalf of all others similarly situated (collectively referred to as "Class Members" or the "Class"), against The Gap, Inc., and its wholly-owned operating subsidiary, Old Navy, LLC, (collectively "The Gap'" or "Defendants").

2.      Plaintiff generally alleges that The Gap violates Missouri law by making false and misleading price comparisons in connection with the advertisement and sale of its merchandise.

3.      The false and misleading price comparisons appear in a variety of places, including on price tags affixed to items, on signs posted in retails stores, in print advertisements, in mailing circulars, and on The Gap and Old Navy websites (gap.com and oldnavy.gap.com, respectively).  Through these mediums, Defendants represent that consumers can buy products from The Gap on "sale" and at a substantial discount from their advertised former price.  In

reality, the purported "sale" and discounts are illusory, fictitious and in violation of Missouri law because the advertised higher former prices are not actual or bona fide recent former prices of The Gap products.  In fact, The Gap has not sold substantial quantities of such products at the higher advertised former prices in the recent past, nor has it offered to sell such products at those prices for a reasonable and substantial period of time preceding the advertised "sale."  As a result of this practice, Plaintiff and the Class have not received the benefit of the bargain that The Gap promises them because the products that they purchased from The Gap do not have the higher value and worth that The Gap represents they have through its false and misleading price comparisons.

4.      The Federal Trade Commission ("FTC") describes false former pricing schemes, similar in all material respects to the scheme employed by The Gap, as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

16 C.F.R. § 233.1(a).

5.      Missouri law also explicitly forbids the false and misleading price comparisons that The Gap engages in.  It prohibits a seller, such as The Gap, from advertising former price comparisons unless the comparative price is actual, bona fide and not illusory or fictitious; and is

- A price at which reasonably substantial sales of the product were made to the public by the seller in the regular course of business, and on a regular basis during

a reasonably substantial period of time in the immediate, recent period preceding the advertisement; or

- A price at which the product was openly and actively offered for sale to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of the time in the immediate, recent period preceding the advertisement.

15 Mo. Code of State Regulations 60-7.060(2).

6.      Missouri law also requires that a seller, such as The Gap, not make any price comparison to a former price that is not based on the price in effect immediately preceding the reduction unless the seller clearly discloses that intermediate price reductions have been made. 15 Mo. Code of State Regulations 60-7.060(2)(C).

7.      These laws exist because legislatures know that false price comparisons are an effective way to sell products that consumers would not otherwise buy, or to sell more products than consumers would normally purchase, absent the false price comparison.  Indeed, numerous studies show that consumers are much more likely to purchase an item if they are told that it is being offered at a price less than the price at which the seller or its competitors have previously sold the product.  In other words, consumers are more likely to purchase an item if they are told that an item is worth more than what they are currently being asked to pay for it.  *See, e.g.,* Dhruv Grewal & Larry D. Compeau, Comparative Price Advertising: Informative or Deceptive?, 11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992) ("[b]y creating an impression of savings, the presence of a higher reference price enhances [consumers'] perceived value and willingness to buy [a] product.");  Compeau & Grewal, in Comparative Price Advertising: Believe It Or Not, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002) (noting that "decades of research

support the conclusion that advertised reference prices do indeed enhance consumers'

perceptions of the value of the deal," and concluding that "[c]onsumers are influenced by

comparison prices even when the stated reference prices are implausibly high."); Joan Lindsey-

Mullikin & Ross D. Petty, Marketing Tactics Discouraging Price Search: Deception and

Competition, 64 J. of Bus. Research 67 (January 2011) (concluding that "[r]eference price ads

strongly influence consumer perceptions of value"); Praveen K. Kopalle & Joan Lindsey-

Mullikin, The Impact of External Reference Price On Consumer Price Expectations, 79 J. of

Retailing 225 (2003) (concluding that "research has shown that retailer-supplied reference prices

clearly enhance buyers' perceptions of value" and "have a significant impact on consumer

purchasing decisions."); Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald, An Investigation

Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For

the Product, 6 J. of App'd Bus. Res. 1 (1990) (concluding that "consumers are likely to be misled

into a willingness to pay a higher price for a product simply because the product has a higher

reference price.")

8.      As alleged herein, The Gap has routinely and systematically violated Missouri's

prohibition against false price comparisons, and Plaintiff and members of the proposed Class (as

defined below) were exposed to and victims of Defendants' false price comparisons when they

purchased products from The Gap.  Plaintiff and the Class did not receive the benefit of the

bargain that The Gap advertised they would receive through its use of fictitious price

comparisons.  Instead, Plaintiff and members of the Class received items of lesser value than

what The Gap promised them, while The Gap was unjustly enriched by selling more products,

and at higher prices, than it otherwise would be able to sell absent the false price-comparison

advertising scheme.

4

## PARTIES

9.      Plaintiff Jill Hennessey is and was at all relevant times herein a natural person and a resident of St. Charles, Missouri.  After being exposed to Defendants' false price comparison scheme during the Class Period, Plaintiff bought numerous products for personal, family or household purposes at an advertised discount of more than 20% from an advertised former price at one or more Gap and Old Navy retail stores located in Missouri, and she bought numerous such products from The Gap and Old Navy websites while she was in Missouri.

10.      Defendant The Gap, Inc. is and, at all relevant times herein was, a Delaware Corporation with its headquarters/principal place of business located at Two Folsom Street, San Francisco, California 94105.  Plaintiff is informed and believes and thereon alleges that The Gap, Inc. is licensed to do business and operates numerous retail stores under The Gap and Old Navy brand names in the state of Missouri.

11.      Defendant Old Navy, LLC, is and was, at all relevant times herein, a Delaware Limited Liability Corporation and wholly owned subsidiary of The Gap, Inc.  Plaintiff is informed and believes and thereon alleges that Defendant Old Navy, LLC is licensed to do business and is doing business in the State of Missouri.

12.      Defendants aided and abetted, encouraged and rendered substantial assistance to each other in committing the unlawful and deceptive acts alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of the wrongdoing and realized that the conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

13.     Plaintiff is unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 20 and therefore sues these Defendants by such fictitious names. Plaintiff alleges on information and belief that at all relevant times each of the DOE Defendants was responsible, in some manner, for the acts, omissions, and occurrences herein alleged and Plaintiff's damages were proximately caused thereby.  Plaintiff will amend this Complaint to allege the true names and capacities of the DOE Defendants after they have been ascertained.

14.     Plaintiff is informed and believes and thereupon alleges that at all relevant times herein, each Defendant was the agent, representative, partner, parent company, subsidiary or affiliate of the other Defendants and was acting within the authority of such agency, representation, partnership, or affiliation while doing or omitting to do the acts alleged herein and with the permission, approval, consent, and/or ratification of all other Defendants.

15.     There exists, and at all times herein mentioned existed, a unity of interest and ownership between all of the Defendants, such that all individuality and separation ceased and Defendants became the alter egos of the other Defendants and their principals.  Whenever in this complaint a reference is made to any act or omission of a particular Defendant, such allegation shall be deemed to mean that said Defendant, and its officers, directors, agents, representatives, and employees did authorize such act while actively engaged in the management, direction or control of that Defendant, and while acting within the course and scope of their employment or agency.

## JURISDICTION AND VENUE

16.     Plaintiff and/or other putative Class Members have different citizenship from Defendants.

17.     The aggregate amount of damages incurred by Plaintiff and the Class (as defined below) exceeds $5,000,0000.

18.     Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. Section 1332, subdivision (d).

19.     As set forth herein, each Defendant has sufficient contact and presence within the State of Missouri to confer this Court with personal jurisdiction over each Defendant. Defendants own, operate, license and otherwise control numerous retail stores in the State of Missouri, in which they sell, clothing, footwear and accessories to Missouri residents. Defendants also operate their websites, gap.com and oldnavy.gap.com, from which Missouri residents can and do buy merchandise, including products falsely advertised with a discount of 20% or more below their purported former prices.

20.     Venue is proper in this Court under 28 U.S.C. Section 1391 because Defendants transact business in this judicial district in the County of St. Louis, State of Missouri, and the claims of Plaintiff and other putative Class Members arose in this judicial district.  Plaintiff resides in this judicial district, viewed Defendants' false and misleading advertisements in this judicial district, and purchased items at Defendants' stores located in this judicial district.

## GENERAL ALLEGATIONS

21.     The Gap represents itself as a leading global apparel retail company that offers apparel, accessories and personal care products for men, women, and children under several retail brands, including The Gap and Old Navy.  Defendants sell products to consumers both in retail stores and online, through Company-operated and franchise stores, including retail stores named The Gap and Old Navy, and through Company-owned websites, including gap.com and

oldnavy.gap.com.  Most of the products sold under The Gap and Old Navy brand names are designed by The Gap, Inc.

22.     Defendants arrange to have price tags affixed to all (or the vast majority) of the products offered for sale in their retail stores.  Defendants then use a variety of signs and placards designed and intended to convey that consumers can purchase products at a substantial discount from the price listed on the price tag.  Specifically, the signs and placards advertise words such as "sale," "now" and/or "buy one get one [x]% off," juxtaposed against a higher "Regular" comparison price that corresponds with the price represented on the price tag.  In this manner, Defendants convey that the price on the price tag is Defendants' former, original or "Regular" price, but that products can be purchased at a substantial discount from that price.

23.     Similarly, on The Gap website, gap.com, Defendants advertise that products can be purchased "Now" for a price that is much lower than a former comparative price, and that additional "sale" or percentage off ("[x]% off") discounts will be applied at checkout.  In order to emphasize and contrast the price comparison and purported discount, Defendants highlight the lower selling price in red text juxtaposed immediately below the higher former comparative price.

24.     Similarly, on the Old Navy website, oldnavy.gap.com, Defendants advertise that products can be purchased for a lower "sale" price, and/or for a specific percentage off (e.g. "40% off"), compared to a higher referenced price that is slashed through with a line as if to convey that it is the former or "regular" price of that item.  Again, Defendants emphasize and contrast the two prices by highlighting the lower selling price in red text juxtaposed immediately below the higher slashed-through former comparative price.

25.     In fact, the advertised price comparisons and discounts are fabricated and illusory because Defendants do not have, and never did have, any good faith or bona fide intention of offering or selling any meaningful quantity of their products at the higher former prices displayed on the tags, signs, placards and websites.  Rather, Defendants offer and/or sell, at most, only a tiny fraction (significantly less than 5%) of their products at the advertised former prices and, in many instances, they do not offer or sell *any* of those items at the higher advertised former prices.  The higher comparison prices are therefore fictitious and do not represent the actual value of the products that Defendants sell, and consumers who purchase those items do not receive products that have the value or worth that Defendants advertise.

26.     Defendants also offer a constant array of promotions, such as store-wide sales, coupons, and other discounts, such that the average actual selling price (and therefore market value) of each item is often *less* than the advertised "sale" price.  In other words, a consumer who purchases a product from Defendants at the advertised "sale" price is likely paying more than the amount most people pay for that item and, therefore, likely paying more than the fair market value of the item.

27.     Since the higher advertised former prices materially overstate the actual market value and worth of Defendants' products, consumers like Plaintiff and the Class who buy these products do not receive the benefit of the bargain Defendants promise them, and they suffer damages because they do not receive items that have the value or worth that Defendants represent they have.  Instead, Plaintiff and the members of the Class receive products that, based on actual, historical selling prices, have a market value that was, at the time of purchase, significantly below the advertised former comparison price and, in many cases, equal to or below the prices they paid to purchase those items.

28.     Through their use of fictitious and unsubstantiated former price comparisons, Defendants intentionally and/or negligently misrepresented and/or failed to disclose material information concerning the actual value or worth of the products they sold to Plaintiff and the Class.  In publishing, displaying, and otherwise communicating and disseminating the higher former comparison prices, and the advertised discounted "sale" prices, and in concealing the true information, Defendants intended to induce Plaintiff and members of the Class to purchase products in quantities and/or at prices at which they would not otherwise have agreed.

29.     Defendants knew or should have known that their price-comparison advertisements conveyed false information to consumers, including Plaintiff, about the value and worth of the merchandise they sell.  Academic literature shows that false price comparisons influence consumer behavior; that higher former prices influence consumer perception of value and purchasing decisions; and that if a former comparison price is fictitious or inflated, it is likely to deceive consumers by creating illusions of savings that the consumer thinks they need to take advantage of by purchasing the product now rather than risk losing the purported savings or continuing to look for a better deal elsewhere.

30.     Defendants further knew or should have known that, as discount size increases, consumers' perceptions of value and their willingness to buy a product increases, while their intention to search for a lower price decreases.  Accordingly, information concerning a product's former price is a material term which impacted Plaintiff, acting as a reasonable consumer, in making decisions as to whether to purchase items advertised and sold by Defendants.

## PLAINTIFF WAS A VICTIM OF DEFENDANTS' PRACTICES

31.     After being exposed to Defendants' price-comparison advertising scheme, Plaintiff purchased numerous products from Defendants for personal, family or household purposes during the Class Period.

32.     In making said purchases, Plaintiff was misled by the higher advertised value of the products that she purchased and, if Defendants had offered a truthful discount from the actual, former prices of their products, Plaintiff would have paid less than she did pay to purchase those items based on an actual and truthful discount.  In any event, Plaintiff did not receive the actual value that Defendants represented she would receive through their false and misleading price-comparison advertising scheme.

33.     For example, on or about November 27, 2016, Plaintiff shopped on the Old Navy website and, after viewing the higher comparison prices Defendants advertised thereon, she purchased numerous products for personal, family or household purposes.  This transaction included the following products:

| QTY | SKU # | ITEM DESCRIPTION | ADVERTISED FORMER PRICE | ADVERTISED DISCOUNT | PRICE PAID[1] |
|---|---|---|---|---|---|
| 1 | 2842220020004 | Ruffle Blouse for Women/Navy Flora/XL | $15.29 | $6.12 | $9.17 |
| 1 | 3373450120003 | Go-Dry Reflective /BLACK PRIN/L | $13.47 | $5.39 | $8.08 |
| 1 | 3429160220004 | High-Neck Swing Ta/White/XL | $22.45 | $8.98 | $13.47 |
| 1 | 4286940020003 | Go-Dry Mesh-Panel /GLITTER DO/L | $32.40 | $12.96 | $19.44 |
| 1 | 4378020020004 | V-Neck Jumpsuit for Women/Black/XL | $35.95 | $14.38 | $21.57 |
| 1 | 6412710020003 | Long Leggings/Black/L | $10.80 | $4.31 | $6.49 |

---
[1] Excluding tax.

34.     The "Summary" of Plaintiff's charges represents that Plaintiff purchased merchandise worth $130.36 for a discounted price (including tax of $4.65) of $82.87.

35.     Plaintiff is now informed and believes and thereupon alleges that all of the alleged former prices were false and misleading, and in violation of Missouri law, because they did not represent the actual, bona fide prices at which Defendants had recently offered to sell those products for a reasonable period of time, or at which Defendants sold a substantial number of such products, in the time period recently preceding her transaction.  Plaintiff is further informed and believes that Defendants may have failed to disclose intermediate markdowns that took place prior to her purchase.  Plaintiff is further informed and believes that the prevailing retail price and, therefore, the actual fair market value of each item at the time of her purchase was materially lower than the advertised former prices and may have even been less than the discounted prices that she paid.  In any event, Plaintiff suffered monetary damages because she did not receive products that, at the time of purchase, were worth the advertised former prices (collectively $130.36), and she therefore did not receive the benefit of the bargain that Defendants promised.  Alternatively, Plaintiff paid more than the actual, fair market value of one or more of these items, while Defendants were unjustly enriched and received ill-gotten gains.

36.     Similarly, on or about November 28, 2016, Plaintiff shopped on the Old Navy website and, after viewing the higher comparison prices Defendants advertised thereon, she purchased numerous products for personal, family or household purposes.  This transaction included the following products:

| QTY | SKU # | ITEM DESCRIPTION | ADVERTISED FORMER PRICE | ADVERTISED DISCOUNT | PRICE PAID[2] |
|---|---|---|---|---|---|
| 1 | 1520950220004 | Relaxed Racerback/Heather Gr/XL | $4.99 | $2.50 | $2.49 |
| 1 | 2275000120004 | Frost Free Quilted/Winter Spr/XL | $45.00 | $22.50 | $22.50 |
| 1 | 2834220020005 | Classic Plaid Shir/Marron Pla/XXL | $12.99 | $6.50 | $6.49 |
| 1 | 2836070220004 | Classic Flannel Sh/Navy/Red/XL | $17.00 | $8.47 | $8.53 |
| 1 | 2836840120005 | Classic Plaid Sof/Black Plai/XXL | $16.99 | $8.50 | $8.49 |
| 1 | 2949320120003 | Performance Fleece/Grey/L/XL | $4.00 | $2.00 | $2.00 |
| 2 | 3369470020000 | Patterned Performa/Blue Multi/One Siz | $10.00 | $5.00 | $10.00 |
| 1 | 3369470420000 | Patterned Performa/MULTI 1/One Siz | $10.00 | $5.00 | $5.00 |
| 1 | 3373450120004 | Go-Dry Reflective /BLACK PRIN/XL | $14.97 | $7.49 | $7.48 |
| 2 | 4331020320000 | Patterned Pom-Pom /USA/One Siz | $11.00 | $5.50 | $11.00 |
| 1 | 8159050120002 | Men's Go-Dry Cool /Panger/M | $12.99 | $6.50 | $6.49 |
| 1 | 8159050120002 | Men's Go-Dry Cool /Panther/M | $12.99 | $6.50 | $6.49 |

37.     The "Summary" of Plaintiff's charges represents that Plaintiff purchased merchandise worth $193.92 for a discounted price (including tax of $5.77) of $102.73.

38.     Plaintiff is now informed and believes and thereupon alleges that all of the alleged former prices were false and misleading, and in violation of Missouri law, because they did not represent the actual, bona fide prices at which Defendants had recently offered to sell those products for a reasonable period of time, or at which Defendants sold a substantial number of

---

[2] Excluding tax.

such products, in the time period recently preceding her transaction.  Plaintiff is further informed

and believes that Defendants may have failed to disclose intermediate markdowns that took place

prior to her purchase.  Plaintiff is further informed and believes that the prevailing retail price

and, therefore, the actual fair market value of each item at the time of her purchase was

materially lower than the advertised former prices and may have even been less than the

discounted prices that she paid.  In any event, Plaintiff suffered monetary damages because she

did not receive products that, at the time of purchase, were worth the advertised former prices

(collectively $193.92), and she therefore did not receive the benefit of the bargain that

Defendants promised.  Alternatively, Plaintiff paid more than the actual, fair market value of one

or more of these items, while Defendants were unjustly enriched and received ill-gotten gains.

     39.    Similarly, on or about June 1, 2018, Plaintiff shopped at the Old Navy retail store

located at 10940 Sunset Hills Plaza, Sunset Hills, Missouri 63127, and, after viewing the higher

comparison prices Defendants advertised there, she purchased numerous products for personal,

family or household purposes.

     40.    This transaction included the following products:

| QTY | SKU # | ITEM DESCRIPTION | ADVERTISED FORMER PRICE | ADVERTISED DISCOUNT | PRICE PAID[3] |
|-----|-------|------------------|------------------------|---------------------|-----------|
| 1 | Illegible | EveryWear Crew-Neck Tee for Women | $14.99 | $7.50 | $7.49 |
| 1 | 3402760110004 | EveryWear Striped Crew-Neck Tee for Women | $12.99 | $6.50 | $6.49 |
| 1 | 2235180010004 | Slim-Fit Striped Ringer Tee for Women | $16.99 | $8.50 | $8.49 |

---

[3] Excluding tax.

41.    At the time she made these purchases, Plaintiff also purchased several other items, including an SS Mariner Tee (SKU# 2019770710003), a Printed Boyfriend Scoop-Neck Tee for Women (SKU# 2019720010003), a Printed Boyfriend Scoop-Neck Tee for Women (SKU# 2019720010004) and a Relaxed Sleeveless Tie-Neck Boho Top for Women (SKU# 2020800110004).  Plaintiff's receipt does not show, and Plaintiff does not currently remember, the higher comparison price associated with these products but she believes, and on that basis alleges, that they may have also been advertised with fictitious higher comparison prices.  If appropriate, Plaintiff will amend her complaint to add additional details concerning her purchase of these products after relevant discovery.

42.    In connection with this transaction, Plaintiff received a receipt from Defendants that says she received a "Total Discount" of $22.50 and paid (before taxes) a total of $44.93. The obvious implication being that Plaintiff received items worth (at least) $67.43 ($22.50 + $44.93).

43.    Plaintiff is now informed and believes and thereupon alleges that all of the alleged former prices were false and misleading, and in violation of Missouri law, because they did not represent the actual, bona fide prices at which Defendants had recently offered to sell those products for a reasonable period of time, or at which Defendants sold a substantial number of such products, in the time period recently preceding her transaction.  Plaintiff is further informed and believes that Defendants may have failed to disclose intermediate markdowns that took place prior to her purchase.  Plaintiff is further informed and believes that the prevailing retail price and, therefore, the actual fair market value of each item at the time of her purchase was materially lower than the advertised former prices and may have even been less than the discounted prices that she paid.  In any event, Plaintiff suffered monetary damages because she

did not receive products that, at the time of purchase, were worth the advertised former prices

(collectively $67.43), and she therefore did not receive the benefit of the bargain that Defendants

promised.  Alternatively, Plaintiff paid more than the actual, fair market value of one or more of

these items, while Defendants were unjustly enriched and received ill-gotten gains.

44.     Similarly, on or about November 26, 2018, Plaintiff shopped on the Old Navy

website and, after viewing the higher comparison prices Defendants advertised thereon, she

purchased numerous products for personal, family or household purposes.  This transaction

included the following products:

| QTY | SKU # | ITEM DESCRIPTION | ADVERTISED FORMER PRICE | ADVERTISED DISCOUNT | PRICE PAID[4] |
|---|---|---|---|---|---|
| 1 | 2019770320004 | Relaxed Mariner-Stripe Thick-Knit Tee for Women | $14.97 | $7.49 | $7.48 |
| 1 | 3398010320002 | Soft-Washed Color-Blocked Raglan Tee for Men | $18.99 | $9.50 | $9.49 |
| 1 | 3787980020002 | Soft Washed Crew-Neck Henley for Men | $14.99 | $7.50 | $7.49 |
| 1 | 3399580220002 | Soft-Washed Henley for Men | $21.99 | $11.00 | $10.99 |
| 1 | 3399580420002 | Soft-Washed Henley for Men | $24.99 | $12.47 | $12.52 |
| 1 | 3779580020002 | Soft-Washed Crew-Neck Henley for Men | $21.99 | $11.00 | $10.99 |

45.     The "Summary" of Plaintiff's charges represents that Plaintiff purchased

merchandise worth $117.92, received "Savings" of $58.96, and paid a discounted price

(including tax of $3.51) of $62.47.

---

[4] Excluding tax.

46.     Plaintiff is now informed and believes and thereupon alleges that all of the alleged former prices were false and misleading, and in violation of Missouri law, because they did not represent the actual, bona fide prices at which Defendants had recently offered to sell those products for a reasonable period of time, or at which Defendants sold a substantial number of such products, in the time period recently preceding her transaction.  Plaintiff is further informed and believes that Defendants may have failed to disclose intermediate markdowns that took place prior to her purchase.  Plaintiff is further informed and believes that the prevailing retail price and, therefore, the actual fair market value of each item at the time of her purchase was materially lower than the advertised former prices and may have even been less than the discounted prices that she paid.  In any event, Plaintiff suffered monetary damages because she did not receive products that, at the time of purchase, were worth the advertised former prices (collectively $117.92), and she therefore did not receive the benefit of the bargain that Defendants promised.  Alternatively, Plaintiff paid more than the actual, fair market value of one or more of these items, while Defendants were unjustly enriched and received ill-gotten gains.

47.     Similarly, on or about November 26, 2018, Plaintiff shopped on the Gap.com website and, after viewing the higher comparison prices Defendants advertised thereon, she purchased numerous products for personal, family or household purposes.  This transaction included the following products:

| QTY | SKU # | ITEM DESCRIPTION | ADVERTISED FORMER PRICE | ADVERTISED DISCOUNT | PRICE PAID[5] |
|---|---|---|---|---|---|
| 1 | 3575070424005 | Pattern Oxford Shirt in Stretch | $49.95 | $27.48 | $22.47 |
| 1 | 2833600020003 | Oxford Short Sleeve Shirt in Stretch | $39.95 | $21.98 | $17.97 |

---

[5] Excluding tax.

| 1 | 4103550120003 | Standard Fit Short Sleeve Shirt in Linen-Cotton | $39.95 | $21.97 | $17.98 |
|---|---|---|---|---|---|

48.     The "Summary" of Plaintiff's charges represents that Plaintiff purchased merchandise worth $129.85, received "Savings" of $71.43, and paid a discounted price (including tax of $3.48) of $61.90.

49.     Plaintiff is now informed and believes and thereupon alleges that all of the alleged former prices were false and misleading, and in violation of Missouri law, because they did not represent the actual, bona fide prices at which The Gap had recently offered to sell those products for a reasonable period of time, or at which The Gap sold a substantial number of such products, in the time period recently preceding her transaction.  Plaintiff is further informed and believes that The Gap may have failed to disclose intermediate markdowns that took place prior to her purchase.  Plaintiff is further informed and believes that the prevailing retail price and, therefore, the actual fair market value of each item at the time of her purchase was materially lower than the advertised former prices and may have even been less than the discounted prices that she paid.  In any event, Plaintiff suffered monetary damages because she did not receive products that, at the time of purchase, were worth the advertised former prices (collectively $129.85), and she therefore did not receive the benefit of the bargain that The Gap promised. Alternatively, Plaintiff paid more than the actual, fair market value of one or more of these items, while The Gap was unjustly enriched and received ill-gotten gains.

50.     The transactions described above are but a sampling of the products that Plaintiff purchased from Defendants (both in their stores and on their websites) during the Class Period based on similar false and misleading representations concerning those products' former prices. Plaintiff was similarly injured as a result of Defendants' false and deceptive price comparisons

with respect to each such purchase and, by detailing the above transactions, Plaintiff does not in any way intend to limit the scope of her claims or request for relief to the detailed transactions. Rather, Plaintiff expressly seeks damages for all of her similar transactions with Defendants and, if necessary, Plaintiff will amend or seek leave to amend this Complaint based on the discovery of additional such transactions.

51.     Plaintiff would like to shop at Defendants' retail stores and on their websites again in the immediate future, but she currently cannot trust that Defendants will advertise truthful price comparisons in compliance with Missouri law.  If Defendants agree to voluntarily change their practices, or if Defendants are ordered to do so by a court of competent jurisdiction, such that Plaintiff can reasonably trust that Defendants' price comparison advertisements will comply with Missouri law, Plaintiff will return to shop at Defendants' stores and websites.

52.     Defendants' deceptive practices are wide-spread over the course of many years. Plaintiff therefore believes that hundreds or thousands of similar and materially indistinguishable acts of misleading, untrue, false and deceptive price-comparison advertising were committed by Defendants with respect to Class Members' purchases at Defendants' stores and websites throughout Missouri during the Class Period.

53.     Plaintiff asserts that Defendants continue to employ unfair, deceptive, false, misleading, and untrue advertising practices as alleged herein.  Plaintiff, on behalf of herself and the putative Class, seeks all actual damages, punitive damages, injunctive relief, costs, attorneys' fees, and any other relief the court deems proper.

**CLASS DEFINITION**

54.     The Class is defined as follows:

"All persons who, while in the state of Missouri, and any time between the date

that is five years immediately preceding the filing of this lawsuit and the date of

any judgment in this case (the "Class Period"), purchased from Defendants (either

at a Gap store, at an Old Navy store, or from either stores' website) for personal,

family or household purposes one or more items advertised with a former price

that was 20% or more above the purported discount or "sale" price and who have

not received a refund or credit for their purchase(s)."

Excluded from the Class are Defendants, as well as their officers, directors, employees.

55.     Plaintiff reserves the right to amend this class definition, including the addition of

any subclasses and or modification of the Class Period, at any time based upon further

investigation, information and/or discovery.

## CLASS ALLEGATIONS

56.     Plaintiff seeks certification of the Class pursuant to Federal Rules 23(a) and

23(b)(3) and may also, or in the alternative, seek certification of subclasses and/or particular

issues pursuant to Federal Rules 23(c)(4) and (5).

57.     The members of the Class identified above are so numerous that joinder of all

members is impracticable.  While the exact number of Class Members is unknown to Plaintiff at

this time, the individual identities of the individual members of the Class are ascertainable

through Defendants' records and/or by public notice and self-identification.

58.     There is a well-defined community of interest in the questions of fact and law

involved affecting the members of the Class.  The questions of law and fact common to the

members of the Class predominate over questions affecting only individual Class Members, and

include, but are not limited to, the following:

a.      Whether Defendants made false or misleading statements in connection with their price-comparison advertising;

b.      Whether Defendants' price-comparison advertising was false, deceptive, misleading or unlawful under Missouri law;

c.      Whether Defendants' advertisements were likely to deceive a reasonable consumer;

d.      Whether Defendants' statements regarding their price comparisons were material to Plaintiff's and consumers' purchasing decisions;

e.      Whether the higher comparison prices advertised by Defendants were actual and bona fide, or fictitious under Missouri law;

f.      Whether the higher comparison prices advertised by Defendants were intended to convey, or did convey, an actual former and bona fide price that Defendants in the recent past charged for the same or a materially similar item;

g.      Whether Defendants had a bona fide intent of selling a reasonable quantity of its items at the advertised former comparison prices;

h.      Whether the former comparison prices advertised by Defendants overstate the fair market value of the items so advertised;

i.      Whether Plaintiff and putative Class Members have suffered damages as a result of Defendants' conduct;

j.      Whether Plaintiff and the Class received the benefit of the bargain that Defendants advertised they would receive;

k.      Whether the members of the Class are entitled to injunctive relief;

21

l.      Whether the members of the Class are entitled to pre-judgment and post-judgment interest;

m.      Whether the members of the Class are entitled to punitive damages; and

n.      Whether the members of the Class are entitled to an award of reasonable attorneys' fees and costs.

59.     Plaintiff's claims are typical of the claims of the other members of the Class which all arise from the same operative set of facts involving Defendants' false price-comparison advertising scheme and are entitled to damages of the same character.

60.     Plaintiff will fairly and adequately protect the interests of the Class and has no known conflicts of interest.  Plaintiff has retained counsel experienced in handling consumer class actions of the type alleged herein.

61.     Prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class Members and would lead to repetitious trials of the numerous common questions of fact and law in the State of Missouri; and could lead to the establishment of incompatible standards of conduct for Defendants.  Such individual adjudications would be, as a practical matter, dispositive of the interests of, or would substantially impair or impede the interests of, the other Class Members. Plaintiff is not aware of any difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

62.     Defendants have acted or have refused to act on grounds that generally apply to the Class and final injunctive relief is appropriate as to the Class as a whole.  Specifically, Defendants have advertised misleading and untrue comparison prices of their merchandise in

violation of Missouri law, and injunctive relief is necessary to avoid ongoing violations in the future.

63.     The common questions of law and fact predominate over any questions affecting only individual members.  Furthermore, a class action is a superior method for fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendants to comply with applicable law.  The interest of Class Members in individually controlling the prosecution of separate claims against Defendants is small relative to the cost of maintaining an action.

64.     Proper and sufficient notice of this action may be provided to the Class Members through methods best designed to provide adequate notice, including potentially a combination of electronic mail and/or postal mail, internet website, and/or publication.

65.     Furthermore, the Class Members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class.  Absent certification of this action as a class action, Plaintiff and the members of the Class will continue to be damaged, thereby allowing Defendants to retain the proceeds of their ill-gotten gain.

66.     Plaintiff alleges that, as a direct result of bringing the allegations herein to Defendants' attention, Plaintiff has or will make substantial and important changes to Defendants' advertising practices.  Thus, Plaintiff has or will enforce an important public right affecting the public interest, conferring a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.  Plaintiff further alleges that private enforcement of the laws-in-question is both necessary and financially burdensome for Plaintiff.

## COUNT I

**Unlawful Practices in Violation of the Missouri Merchandising Practices Act**

67.     Plaintiff incorporates and realleges each and every preceding paragraph as though fully set forth herein.

68.     The Missouri Merchandising Practices Act ("MMPA") provides, in part, that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice." V.A.M.S. § 407.020(1).

69.     Defendants violate the MMPA because their price-comparison advertising scheme violates federal regulations promulgated by the FTC, including 16 C.F.R. § 233.1(a), which describes acts and practices materially indistinguishable from those of Defendants as deceptive.

70.     Defendants also violate the MMPA because their price-comparison advertising scheme violates numerous rules promulgated by the Missouri Attorney General, which such acts and practices are deemed to violate the MMPA, including the following:

a.  A seller, such as The Gap, may not "use terminology implying a reduction from a price in effect immediately prior to the advertisement (examples: sale, sale prices, now only $___) unless . . . [t]he reduction is, in fact, from a bona fide regular price in effect immediately prior to the advertisement." 15 CSR 60-7.050.

b.  A seller, such as The Gap, may not make any price comparison in which the product being advertised materially differs in composition, grade or quality, style or design, model, name or brand, kind or variety, or service and performance

24

characteristics from the comparative product, unless the seller clearly discloses the material difference in the advertisement with the price comparison. 15 CSR 60-7.060(1).

c.  A seller, such as The Gap, also shall not make a price comparison to a former price, including through the use of terms such as "regular" or "original" price, unless the comparative former price is actual, bona fide and not illusory or fictitious, and is—

- A price at which reasonably substantial sales of the product were made to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of time in the immediate, recent period preceding the advertisement.  There shall be a rebuttable presumption that the seller has not complied with these terms unless the seller can show that the percentage of unit sales of the product at the comparative price, or at prices higher than the comparative price, is ten percent (10%) or more of the total unit sales of the product during a period of time, not less than thirty (30) days nor more than twelve (12) months, which includes the advertisement; or

- A price at which the product was openly and actively offered for sale to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of the time in the immediate, recent period preceding the advertisement. There shall be a rebuttable presumption that the seller has not

complied with these terms unless the seller can show that the product was offered for sale at the comparative price, or at prices higher than the comparative price, forty percent (40%) or more of the time during a period of time, not less than thirty (30) days nor more than twelve (12) months, which includes the advertisement;

- A price at which reasonably substantial sales of the product were made to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of time in any period preceding the advertisement, and the advertisement clearly discloses, with the price comparison, the date, time or seasonal period of that offer.  There shall be a rebuttable presumption that the seller has not complied with these terms unless the seller can show that the percentage of unit sales of the product at the comparative price, or at prices higher than the comparative price, is ten percent (10%) or more of the total unit sales of the product during the disclosed date, time or seasonal period; or

- A price at which the product was openly and actively offered for sale to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of time in any period preceding the advertisement, and the advertisement clearly discloses with the price comparison, the date, time or seasonal period of that offer.  There shall be a rebuttable presumption that the seller has not complied with these terms unless the seller can show that the

product was offered for sale at the comparative price, or at prices

higher than the comparative price, forty percent (40%) or more of the

time during a period of time, not less than thirty (30) days nor more

than twelve (12) months, which includes or is included within the

disclosed date, time or seasonal period.

15 CSR 60-7060(2)(B).

71.     As alleged herein, in their retail stores and on their websites, Defendants routinely

and systematically use higher former prices juxtaposed next to lower sale prices, and words such

as "now," "Reg.," "[x]% off," "sale," "Merchandise Subtotal," "My Savings" and "Total

Discount," all of which are designed and intended to falsely state or imply that Defendants'

merchandise can be purchased at a price that is a reduction from a price in effect immediately

prior to the advertisement and/or transaction.  In fact, the higher comparison prices are false and

misleading because they do not represent a bona fide regular price in effect immediately prior to

the advertisement and, to the extent Defendants claim the higher price relates to a competitors'

product, the products Defendants sell are materially different in composition, quality, grade,

material, style and/or brand from any such competitor's products that have been sold (or would

be sold) for the higher comparison prices advertised by Defendants.

72.     Additionally, a seller, such as The Gap, shall not make any price comparison to a

former price that is not based on the price in effect immediately preceding the reduction unless

the seller clearly discloses that intermediate price reductions have been made.  15 CSR 60-

7060(2)(C).  As alleged herein, The Gap does not disclose intermediate price reductions in

violation of this rule and in further violation of the MMPA.

73.     Finally, a seller shall not use any price comparison or savings claims in its advertisement of products in Missouri unless it maintains adequate records which disclose the factual basis for the price comparison or savings claims and from which the validity of any claim can be established, and these records shall be maintained for at least twelve (12) months from the date of the advertisement.  Upon information and belief, Defendants do not maintain adequate records that disclose the basis for their price comparisons and upon which the validity of their price comparison claims can be established and thereby further violate the MMPA.

74.     Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by Section 407.020, may bring a private civil action to recover actual damages.  The court may, in its discretion, award punitive damages and may award to the prevailing party attorneys' fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.  V.A.M.S. 407.025.

75.     As alleged herein, Plaintiff and the Class purchased from Defendants various products for personal, family or household purposes.  Defendants advertised that those products were on "sale" and/or could be purchased at a substantial discount compared to a higher former price.  In reality the "sale" prices were not reductions from bona fide prices in effect immediately prior to the advertised sales, and the higher comparative prices were not prices at which Defendants had recently sold such products in substantial quantities, or prices at which Defendants had recently offered to sell such products for a substantial period of time.

76.     The acts and practices of Defendants, as alleged herein, were intended and likely to deceive consumers.

28

77.     The acts and practices of Defendants, as alleged herein, caused actual damages to Plaintiff and the Class, who did not receive the benefit of their bargain, because the actual market value of the products they purchased was materially less than the former comparison prices advertised by Defendants.  On behalf of herself and the Class, Plaintiff seeks from Defendants benefit of the bargain damages, in addition to punitive damages, interest, attorneys' fees and any and all other relief to which they are entitled.

78.     In addition, Plaintiff and the putative class seek and are entitled to a permanent injunction restraining Defendants from continuing to violate Missouri law through their price-comparison advertising scheme.

## COUNT II

### Unjust Enrichment

79.     Plaintiff incorporates and realleges each and every preceding paragraph as though fully set forth herein.

80.     As a result of Defendants' false price comparison advertising scheme, Defendants were unjustly enriched at the expense of Plaintiff and the Class who purchased from Defendants more products and/or paid higher prices than they would have absent the scheme.

81.     Defendants intentionally accepted, retained and appreciated the money that Plaintiff and the Class spent purchasing products that were tainted and influenced by the false price comparison advertising scheme.

82.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and the Class in light of the fact that the products that Plaintiff and the Class purchased from Defendants did

not have the higher value or worth that Defendants represented they had through their false former price comparisons.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the putative Class pray for judgment against all Defendants as follows:

1.  For an order that this action be certified as a class action on behalf of the proposed Class and Plaintiff be appointed as representative of the Class; and

2.  For an order and judgment preliminarily and permanently enjoining Defendants from employing, utilizing or otherwise publishing false, untrue, and misleading "Regular" or "Original" prices;

3.  For an order compelling Defendants to institute policies and procedures which will educate Defendants' employees as to Missouri price-comparison advertising laws and assure that such employees follow the law;

4.  For such orders or judgments as the Court may consider necessary to prevent the use or employment of Defendants of any practices which violate Missouri law;

5.  For actual damages, measured by the benefit of the bargain that Defendants represented, but which Plaintiff and the Class did not receive;

6.  For equitable relief, including disgorgement of ill-gotten gains and unjust enrichment obtained by Defendants;

7.  For attorneys' fees and costs;

8.  For pre-judgment interest;

9.  For post-judgment interest; and

10. For such other and further relief as the court may deem proper.

BLITZ, BARDGETT & DEUTSCH, L.C.

By: /s/   *Christopher O. Bauman*
Robert D. Blitz #24387
Christopher O. Bauman #52480
120 South Central Ave., Suite 1500
St. Louis, Missouri 63105
314-863-1500 (office)
314-863-1877 (facsimile)
rblitz@bbdlc.com
cbauman@bbdlc.com


Matthew Zevin
Stanley Law Group
10021 Willow Creek Road, Suite 200
San Diego, California 92131
619- 235-5306 (office)
815-377-8419 (facsimile)
mzevin@aol.com

Scott A. Kitner
Stanley Law Group
6116 N. Central Expressway, Suite 1500
Dallas, Texas 75206
214-443-4301 (office)

*Attorneys for Plaintiff and Class*

Daniel B. Sivils #40685
121 Summer Brook Lane
Branson, Missouri 65616-7007
417-827-7202 (office)


*Attorney for Plaintiff Jill Hennessey*